*In re* MARRIAGE OF PATRICIA D. SIEGEL, Petitioner, and ELLIOT M. SIEGEL, Respondent-Appellee (Maureen Daley, Petitioner-Appellant).

Second District    No. 2—94—0311

Opinion filed March 30, 1995.

Jane F. Fields, of Chicago, for appellant.

Larry R. Kane and Errol Zavett, both of Davis, Friedman, Zavett, Kane & MacRae, of Chicago, and Jay J. Johnston, of Roach, Johnston, Bollman & Thut, of Waukegan, for appellee.

JUSTICE THOMAS delivered the opinion of the court:

The petitioner, Maureen Daley, filed a petition as a nonparent pursuant to section 601 of the Illinois Marriage and Dissolution of Marriage Act (Marriage Act) (750 ILCS 5/601 (West 1992)) seeking custody of the respondent's two minor children. The trial court entered an order granting respondent Elliot Siegel's motion to dismiss the petitioner's amended petition for custody. The petitioner appeals, contending that the trial court erred in determining, without an evidentiary hearing, that she did not have standing to petition for custody of the respondent's children. We affirm.

The petitioner's amended complaint alleged that the respondent had been married to the petitioner's sister, Patricia Daley, formerly known as Patricia Siegel (Patricia). The marriage produced two children, Elena Siegel and Marc Siegel. Both children are currently minors. On February 4, 1993, a judgment was entered dissolving the marriage. The petitioner attached a copy of that judgment to her complaint. The judgment provided, *inter alia*, that the respondent and Patricia were to have joint custody of Elena and Marc; the children were to reside primarily with Patricia.

The petitioner's amended complaint further alleged that Patricia died suddenly on November 5, 1993. The petitioner also alleged that at the time of Patricia's death neither parent was in "physical custody" of the children, that for several weeks following Patricia's death the children resided with the petitioner in Patricia's home on a "voluntary" basis, and that the petitioner's "physical possession" of the children basically has been uninterrupted.

Patricia's will named the petitioner as co-executor of Patricia's estate and guardian of her minor children. On November 29, 1993, the petitioner filed her original "Motion for Custody" pursuant to section 11—5 *et seq.* of the Probate Act of 1975 (755 ILCS 5/11—5 *et seq.* (West 1992)) and section 601 of the Marriage Act (750 ILCS 5/601 (West 1992)). On December 17, 1993, respondent filed a "Motion to Strike and Dismiss Petition for Custody" (motion to dismiss). On Feb-

ruary 8, 1994, the petitioner filed her "First Amended Petition for Custody" (amended petition).

The trial court determined the question of standing without an evidentiary hearing. In its December 7, 1993, order, the trial court ruled that standing would be determined by an examination of the pleadings. In her response to the motion to dismiss, the petitioner asserted that she was entitled to an evidentiary hearing on the question of standing. On January 6, 1994, the trial court again ruled that the petitioner was not entitled to an evidentiary hearing. Rather than hold a hearing, the trial court ordered the petitioner to submit a memorandum of law on the question of standing. On February 10, 1994, the trial court dismissed the amended petition pursuant to respondent's motion to dismiss. In its order, the trial court stated that petitioner was "without standing," citing *In re Custody of Peterson* (1986), 112 Ill. 2d 48.

■ Section 601(b)(2) of the Marriage Act allows a nonparent to petition for the custody of a child *but only if* he is not in the physical custody of one of his parents. (750 ILCS 5/601(b)(2) (West 1992).) This statutory section creates a standing requirement that nonparents must satisfy in order to be considered for legal custody of a child. (*In re Custody of Peterson*, 112 Ill. 2d at 52.) It is well settled that the nonparent has the burden of demonstrating that he or she has standing to commence a custody action. (*In re Custody of Peterson*, 112 Ill. 2d at 53; *In re Marriage of Santa Cruz* (1988), 172 Ill. App. 3d 775, 789.) Furthermore, nonparents must show that the parent has relinquished "legal custody" of the child, rather than merely physical possession, before satisfying the standing requirement of section 601(b)(2) of the Marriage Act. *In re Marriage of Dile* (1993), 248 Ill. App. 3d 683, 686; *In re Custody of McCuan* (1988), 176 Ill. App. 3d 421, 427.

In *Peterson*, the divorced mother of an infant child resided in her parents' home with the child. Pursuant to the judgment of dissolution of marriage, the mother had sole custody of the child while the father had reasonable visitation rights. The mother subsequently died; the maternal grandparents and the natural father both sought custody of the child. The father moved to dismiss the grandparents' petition for modification of custody on the ground that the grandparents lacked standing to pursue the action under the statute. Our supreme court held that the maternal grandparents lacked standing. In so holding, the court found that when the mother died, the father gained legal custody of the child, even though he did not have physical custody.

A similar result was reached in *In re Marriage of Dile* (1993), 248 Ill. App. 3d 683. There, a mother was awarded sole custody of a child upon the dissolution of her marriage. The father was awarded visitation and ordered to pay child support. Thereafter, the mother committed suicide. Upon her death, the maternal grandparents took the child to their home, enrolled her in school, and scheduled counseling. When the father came to the grandparents' home to take the child, the grandparents refused to relinquish her. Six months after the mother's death, the grandparents filed a motion for custody. The *Dile* court held that the trial court properly granted the father's motion to dismiss the custody petition. The court found the grandparents' allegation of standing to be insufficient where it was based solely on the fact that the child resided with the grandparents following her mother's death. The court further found that when the mother died the father gained legal custody, and nothing in the record indicated that he relinquished custody to the grandparents.

■ Having examined the case law interpreting the standing requirement of section 601(b)(2), we must now turn to the question of whether the trial court properly dismissed the petitioner's petition without a hearing. Section 2—615 of the Code of Civil Procedure provides for the filing of a motion to dismiss attacking the sufficiency of the complaint. (735 ILCS 5/2—615 (West 1992).) A father's motion to dismiss a custody petition based on a lack of standing which does not designate the section of the Code it is brought under should be construed as a section 2—615 motion to dismiss since it attacks the legal sufficiency of the pleadings. (See *In re Marriage of Santa Cruz* (1988), 172 Ill. App. 3d 775, 789; *In re Custody of O'Rourke* (1987), 160 Ill. App. 3d 584, 585.) A trial court should dismiss a cause of action on the pleadings only if it is clearly apparent that no set of facts can be proven which will entitle a plaintiff to recover. (*Burdinie v. Village of Glendale Heights* (1990), 139 Ill. 2d 501, 504.) This broad statement, however, should not be misconstrued as an adoption of notice pleading. (*Board of Education v. A, C & S, Inc.* (1989), 131 Ill. 2d 428, 438.) Illinois is a fact-pleading jurisdiction. (*Washington v. Chicago Board of Education* (1990), 204 Ill. App. 3d 1091, 1096.) When reviewing a dismissal, it is this court's duty not only to take all well-pleaded facts as true, but also to disregard mere conclusions of law or facts unsupported by the facts alleged. (*Capitol Indemnity Corp. v. Stewart Smith Intermediaries, Inc.* (1992), 229 Ill. App. 3d 119, 123.) Additionally, affidavits may not be considered in support of a section 2—615 motion to dismiss attacking the sufficiency of the complaint. (*Waterfront Estates Development, Inc. v. City of Palos Hills* (1992), 232 Ill. App. 3d 367, 372; *Curtis v. County of Cook* (1982), 109 Ill. App. 3d 400, 409.) Because this process does not require the court to weigh facts or

determine credibility, appellate courts do not give a trial court's judgment deference, but instead review the matter *de novo. T&S Signs, Inc. v. Village of Wadsworth* (1994), 261 Ill. App. 3d 1080, 1084; *Toombs v. City of Champaign* (1993), 245 Ill. App. 3d 580, 583.

■ In the instant case, the respondent supported his motion to dismiss with an affidavit. The affidavit was improper when presented in conjunction with his section 2—615 motion to dismiss. Accordingly, we find that it should have been stricken. Nonetheless, since our standard of review is *de novo*, and we can affirm on any valid basis appearing in the record, we will proceed to address the question of whether the petitioner pleaded sufficient facts which, if taken as true, would have established that the petitioner had standing under section 601(b)(2) of the Marriage Act.

Turning to an examination of the petitioner's amended complaint, we note that it merely alleged that upon the death of the mother neither parent had "physical custody" of the children. This allegation was simply a legal conclusion unsupported by any facts alleged in the complaint. The complaint further alleged that the children resided for several weeks with the petitioner following the mother's death on a "voluntary" basis. The clear precept of *Peterson* and *Dile* indicates that upon the mother's death the father gained legal custody of the children. In fact, the present case is even more compelling because here the father had joint custody of the children pursuant to the judgment of dissolution, while in *Peterson* and *Dile* the deceased parent had been awarded sole custody. The petitioner's amended complaint does not indicate that her care and possession of the children following the mother's death was anything but a fortuitous occurrence. Among the general factors relevant for pleading the existence of standing by a nonparent are: the manner the nonparent came into possession of the children; the nature of the possession; and the duration of the possession. (*In re Marriage of Santa Cruz*, 172 Ill. App. 3d at 783-84.) We hold that *Dile* and *Peterson* require that, under the circumstances of the present case, a nonparent allege in a petition for custody facts showing that the parent has "relinquished" legal custody of the child, rather than merely physical possession, to satisfy the standing requirement. See also *In re Custody of McCuan*, 176 Ill. App. 3d at 427 (finding that *Peterson* stands for the proposition that the nonparent must show that the parent has relinquished legal custody of the child to establish standing).

■ The petitioner's amended complaint is devoid of any factual allegation from which it could be inferred that the father relinquished custody. The mere fact of physical possession of the children by the

petitioner for a short time following the mother's death, be it voluntary or involuntary, is wholly inadequate to establish standing. Accordingly, we find that the trial court properly granted the father's motion to dismiss the petitioner's complaint without an evidentiary hearing.

Additionally, we note that the petitioner did not request leave to amend her first amended complaint or to replead in the trial court. Moreover, she did not indicate a desire to amend her complaint in her notice of appeal or in her appellant's brief. Accordingly, the petitioner is considered to have elected to stand on her dismissed complaint and remanding to allow her to replead is not appropriate. (*Illinois Graphics Co. v. Nickum* (1993), 240 Ill. App. 3d 981, 985; *Mlade v. Finley* (1983), 112 Ill. App. 3d 914, 917.) Although it has often been stated that a complaint should not be dismissed unless it clearly appears that no set of facts could be proved which would entitle the plaintiff to recover, this is not literally true because, if it were, no motion to dismiss under section 2—615 could ever be successful no matter how egregious the deficiencies in the pleading if there were some "facts" included upon which some omniscient trier of fact might theoretically grant recovery. *Illinois Graphics Co.*, 240 Ill. App. 3d at 985.

For the foregoing reasons, the judgment of the circuit court of Lake County is affirmed.

Affirmed.

McLAREN, P.J., concurs.

JUSTICE HUTCHINSON, dissenting:

The sole issue raised on appeal is whether petitioner is entitled to an evidentiary hearing on the issue of her standing to bring the petition for custody. Section 601(b)(2) provides an avenue for nonparents to petition for custody of a child. It states:

"(b) A child custody proceeding is commenced in the court:

\* \* \*

(2) by a person other than a parent, by filing a petition for custody of the child in the county in which he is permanently resident or found, *but only if he is not in the physical custody of one of his parents.*" (Emphasis added.) 750 ILCS 5/601(b)(2) (West 1992).

Questions of physical custody involve both factual determinations and policy considerations. The mere fact that a child is not in the physical possession of a parent is insufficient to establish that the

child is not in the physical custody of the parent. (*In re Custody of Peterson* (1986), 112 Ill. 2d 48, 52-53.) In applying section 601(b)(2) we have stated that how the nonparent comes into physical possession of the child and the duration of the possession are both proper factors to be considered by the trial court. (*In re Marriage of Santa Cruz* (1988), 172 Ill. App. 3d 775, 783.) We have also found the manner and nature of the possession to be relevant facts. (*In re Marriage of Carey* (1989), 188 Ill. App. 3d 1040, 1048.) There is no "litmus test" as a matter of law to determine whether a child is in the physical custody of a parent. (*In re Custody of Kulawiak* (1993), 256 Ill. App. 3d 956, 961.) Because no one factor controls, such a determination depends heavily on the particular facts of each case. *In re Marriage of Carey*, 188 Ill. App. 3d at 1048.

Furthermore, the plain meaning of the words "prove," "show," and "burden of proof" indicates a duty to make apparent or clear by *evidence*. (Black's Law Dictionary 1224, 1379, 196 (6th ed. 1990).) As the majority has pointed out, Illinois is a fact-pleading jurisdiction. (*Washington v. Chicago Board of Education* (1990), 204 Ill. App. 3d 1091, 1096.) For better or for worse, our court system requires that factual issues be resolved through the presentation of evidence. The factual findings of trial courts are given great deference. (*In re Childress* (1990) 138 Ill. 2d 87, 99 (referring to all fact finders).) This deference is accorded because trial courts bring all their senses to bear in determining credibility, while appellate courts are limited to reviewing a pale printed transcription of what trial judges actually observe. (See *McDonald v. Industrial Comm'n* (1968), 39 Ill. 2d 396, 403.) In this case, the trial court made specific findings that petitioner was "without standing" and had "not met her burden of proving that she has standing," but those factual findings were made without the benefit and the safeguards of an evidentiary hearing.

I believe this was an abuse of the trial court's discretion in light of the purpose of section 601(b)(2), an extraordinary piece of legislation. (See *Santosky v. Kramer* (1982), 455 U.S. 745, 753, 71 L. Ed. 2d 599, 606, 102 S. Ct. 1388, 1394; *Stanley v. Illinois* (1972), 405 U.S. 645, 651-52, 31 L. Ed. 2d 551, 558-59, 92 S. Ct. 1208, 1212-13; *In re Enis* (1988), 121 Ill. 2d 124, 128-29 (establishing parents possess a fundamental liberty interest, secured by the due process clause of the fourteenth amendment, in the custody and nurturing of their children).) It provides that a nonparent may seek modification of a parent's fundamental rights. The General Assembly would not lightly enact such legislation and may have been motivated by the many reported cases in which parents, for a variety of reasons, cease to play a part in their children's lives. Section 601(b)(2) is directed at

those cases to protect children where modification of custody would be in the children's best interest, even though the parent or parents might not be "[u]nfit person[s]." (See 750 ILCS 50/1(D) (West 1992).) If this is not the purpose of section 601(b)(2), then it is merely duplicative of the Adoption Act (750 ILCS 50/1 *et seq.* (West 1992)) and the Juvenile Court Act of 1987 (705 ILCS 405/1—1 *et seq.* (West 1992)). When a child's well-being is at stake, the trial court should view the evidence before making a factual finding that eliminates a protection afforded that child by valid legislation.

I also am unable to concur with the majority that petitioner had to show that respondent relinquished legal custody of the children. The language of section 601(b)(2) refers to physical custody. In *Peterson* the supreme court said that physical custody did not necessarily mean actual physical custody (*Peterson*, 112 Ill. 2d at 54), but the supreme court did not say that the terms "physical custody" and "legal custody" were interchangeable. Nor did the supreme court hold or imply that legal custody was more or less legally significant than physical custody. Only recently has another appellate court district in this State taken the position that relinquishment of legal custody is the standard (*In re Marriage of Dile* (1993), 248 Ill. App. 3d 683), and that case relies on *Peterson* to reach that end. I respectfully suggest that such reliance is misplaced.

The *Peterson* case and those cases decided closely thereafter which relied on the *Peterson* case did not deal with joint custody situations. Therefore, these cases were not required to reconcile the language of the statute defining joint custody (750 ILCS 5/602.1 (West 1992)) with the traditional custodian/noncustodian situations they were reviewing. Pursuant to the statute, parents are joint custodians of the children, but one parent is generally charged with the responsibility of providing the "physical residence" (750 ILCS 5/602.1(d)(1), (d)(2) (West 1992)) for the children or is designated the primary residential parent. These terms are significant in light of the "not in the physical custody of one of his parents" mandate of section 601(b)(2).

Furthermore, the term "legal custody" is not found in any statutory section that is being applied or referenced by the majority. "Legal custody" is defined as a "[r]estraint of or responsibility for a person according to law, such as a guardian's authority over the person or property, or both, of his ward." (Black's Law Dictionary 893 (6th ed. 1990).) Parents do not relinquish legal custody. Parents have legal custody of their children by virtue of their status as biological parents. Otherwise, only a court may grant, modify, or terminate (*i.e.*, force a parent to relinquish) legal custody. (See *In re Custody of*

*Roberts* (1982), 107 Ill. App. 3d 913, 918 (stating parties cannot surrender the rights of a child by agreement).) While parents' conduct may give a court reason to terminate legal custody, that conduct does not independently end the parents' rights. If, as the majority holds, lack of physical custody actually means lack of legal custody, the only situations addressed by section 601(b)(2) are those in which (1) a court has previously terminated both parents' legal custody; (2) both parents are dead; or (3) a combination of (1) and (2).

It is clear that in this case a trial court approved a joint parenting agreement and entered a joint custody order, but that action was taken pursuant to statutory authority that states:

"(a) The dissolution of marriage, the declaration of invalidity of marriage, the legal separation of the parents, or the parents living separate and apart shall not diminish parental powers, rights, and responsibilities ***." (750 ILCS 5/602.1(a) (West 1992).)

It appears equally clear that certain circumstances require judicial intervention to determine legal custody rather than to determine if legal custody has been relinquished even after a joint custody order is entered. The most obvious circumstance is that in which a surviving joint custodian does not have physical custody of the children of the previous marriage.

Accordingly, I would remand for an evidentiary hearing on the question of lack of physical custody, and I respectfully dissent.