*In re* MARRIAGE OF OLGA THOMPSON, Petitioner, and MICHAEL THOMPSON, Respondent-Appellee (Corey Thompson, Petitioner-Appellant).

Second District    No. 2—94—1018

Opinion filed May 1, 1995.

John R. Bush, of Hunt, Kaiser, Bush & Aranda, Ltd., of Bensenville, for appellant.

Steven J. Brody, of Chicago, for appellee.

JUSTICE DOYLE delivered the opinion of the court:

This case raises a novel issue: whether a petition for a change of child custody pursuant to the relevant provisions of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/601 *et seq.* (West 1992)) may be brought by the minor child himself. The circuit court dismissed the petition of Corey Thompson (petitioner), the minor child of respondent, Michael Thompson, to change custody from respondent to petitioner's aunt and uncle, Gregor and Anna Maksymiw. Petitioner resided with the Maksymiws after the death of his mother, Olga Thompson, who originally had custody upon the dissolution of her marriage to respondent. After the court awarded respondent custody of petitioner, petitioner sought to transfer custody to the Maksymiws.

On appeal, petitioner argues that the Act gives him standing to petition for a change of custody based on his best interests. He argues that the denial of standing violated his constitutional rights to due process and equal protection. We find no merit in petitioner's arguments, and we affirm the dismissal of his motion.

On March 30, 1992, the circuit court entered a judgment dissolving the marriage of Olga Thompson and respondent. Olga Thompson was awarded the sole custody of the two minor children, Christine (born in 1975) and petitioner (born in 1978).

On November 23, 1993, respondent filed a petition for custody under the Act. He alleged that there had been a substantial change in circumstances in that Olga Thompson died on or about November 12, 1993. Petitioner remained in his deceased mother's home with Christine (who was now emancipated), but he was not receiving the necessary parental supervision. Respondent was a fit and proper person to have custody of petitioner.

On November 23, 1993, the court granted the petition and awarded respondent sole custody of petitioner. The court's written order recited that, on that day, respondent appeared in court in person and by his attorney; petitioner, Christine, and the Maksymiws

each appeared in person. The court found that there was a substantial change in circumstances (Olga Thompson's death) and that respondent was a fit and proper person to have custody of petitioner.

On December 9, 1993, petitioner filed his petition to change custody. He was now represented by counsel. The petition stated that, during the time that Olga Thompson had custody of petitioner, respondent exercised his visitation rights only infrequently and sporadically. Petitioner was currently residing with Anna Maksymiw, Olga Thompson's sister, and Anna's husband Gregor. He did not desire to live with respondent as the father-son relationship was "strenuous at best." Petitioner believed it was in his best interests for custody to be awarded to the Maksymiws.

The petition stated that petitioner had received only one day's notice of respondent's intention to bring his action for custody. As a result, petitioner had been unable to obtain counsel for the November 23, 1993, hearing.

On January 11, 1994, petitioner filed a petition to vacate the November 23, 1993, order granting respondent custody. He stated that he was still residing with the Maksymiws, did not desire to live with respondent, and had not lived with respondent since the dissolution of the marriage. Petitioner asked the court to set respondent's custody petition for a new hearing and grant petitioner leave to file his petition for change of custody pursuant to section 601(b) of the Act (750 ILCS 5/601(b)(West 1992)).

Respondent moved to dismiss this petition. He alleged that, because the petition was filed more than 30 days after the November 23, 1993, order, it was in substance an action under section 2—1401 of the Code of Civil Procedure (735 ILCS 5/2—1401 (West 1992)). Respondent argued that under section 2—1401 the petition was legally insufficient because (1) it pleaded no facts to overcome the presumption that respondent as natural parent had a superior right to the custody of his minor child; and (2) petitioner lacked standing to petition for a change of custody pursuant to section 601 of the Act.

The trial court agreed with both arguments and granted the motion to dismiss. Petitioner's motion to reconsider was denied, and he brought this timely appeal.

■ Central to this case is section 601 of the Act, which reads, as relevant here:

> "(a) A court of this State competent to decide child custody matters has jurisdiction to make a child custody determination in original or modification proceedings as provided in Section 4 of the Uniform Child Custody Jurisdiction Act as adopted by this State [see 750 ILCS 35/4 (West 1992)].

(b) A child custody proceeding is commenced in the court:
(1) by a parent, by filing a petition:

\* \* \*

(2) *by a person other than a parent*, by filing a petition for custody of the child in the county in which he is permanently resident or found, but only if he is not in the physical custody of one of his parents." (Emphasis added.) 750 ILCS 5/601 (West 1992).

The parties disagree over the meaning of the language that we have emphasized. Petitioner insists that there are no exclusions to the sweeping statement that a petition may be brought "by a person other than a parent." He notes that, in a variety of proceedings involving juveniles, courts have protected the interests of the minors by appointing counsel or guardians *ad litem* to represent them. Thus, he maintains, there is nothing implausible in allowing a minor to be a party—even the initiating party—in a custody proceeding.

Respondent asserts that the statute enables a "person other than a parent" to file a petition for "custody of the child," implying that the party bringing the petition must be an adult who may in fact exercise custody over a minor child. Respondent argues further that allowing the child to bring a petition on behalf of nonparents would enable these adult "third parties" to circumvent the natural parent's presumptively superior right to the custody of his child.

To our knowledge, no published opinion from Illinois or elsewhere addresses the issue before us. In *In re Marriage of Apperson* (1991), 215 Ill. App. 3d 378, 384-85, the court held that a minor child who was represented by a guardian *ad litem* lacked standing to move to reconsider an order adjudicating a custody dispute between his natural parents. However, *Apperson* did not address whether a child may petition for a change of custody pursuant to section 601(b)(2), which sets the claims of nonparents against those of a natural parent.

At least when it is viewed in isolation, the language of section 2—601(b)(2) is theoretically amenable to either interpretation. Therefore, we must construe the statute. In doing so, we seek primarily to effectuate the intention of the legislature. (*Illinois Graphics Co. v. Nickum* (1994), 159 Ill. 2d 469, 479.) We must presume that, in passing the statute, the legislature did not intend to foster absurdity, inconvenience, or injustice. (*Baker v. Miller* (1994), 159 Ill. 2d 249, 262; *Purlee v. Liberty Mutual Fire Insurance Co.* (1994), 260 Ill. App. 3d 11, 25.) Given these standards, we conclude that only respondent's interpretation is tenable and that section 601(b)(2) does not give a minor child standing to petition for a change in his own custody.

■ We are guided by the established rule that the natural parent's right to the custody of the child is presumptively superior to claims

by nonparents. (*In re Petition of Kirchner* (1995), 164 Ill. 2d 468, 490; *In re Custody of Peterson* (1986), 112 Ill. 2d 48, 51.) Flowing from this principle is the equally well-established rule that, to have standing to seek custody under section 601(b)(2), nonparents must overcome the presumption by demonstrating that the natural parent does not have physical custody of his or her child. (*Kirchner,* 164 Ill. 2d at 491; *In re Marriage of Nicholas* (1988), 170 Ill. App. 3d 171, 175.) It is only after the nonparents have cleared this substantial hurdle that the court may proceed to determine which locus of custody would serve the best interests of the child. *Peterson,* 112 Ill. 2d at 53; *Nicholas,* 170 Ill. App. 3d at 175.

The importance of the superior rights doctrine is particularly evident in this case. Here, there are no facts alleged to show that respondent has forfeited the presumption that he has a superior right to the custody of his child. He sought custody shortly after the mother died and has done nothing to suggest that he has voluntarily relinquished control of the minor child to the Maksymiws. The mere fact that a child has been in the temporary care of relatives in no way proves that he is not in the "physical custody" of a natural parent. Physical possession does not equal physical custody; at a minimum, nonparents seeking custody lack standing to do so under section 601(b)(2) unless they can show that the natural parent has voluntarily relinquished the custody of his child. *Kirchner,* 164 Ill. 2d at 491; *In re Marriage of Dile* (1993), 248 Ill. App. 3d 683 (holding nonparents had not acquired standing under facts similar to those here).

■ We agree with the trial court that to allow the minor child himself to bring a custody petition on behalf of friends or relatives would undermine principles that the supreme court has set forth. In effect, petitioner seeks to bring a petition on behalf of adults who are not his parents. If the petition is heard and granted, the result will be the same as if these adult relatives themselves had brought the petition. To relax the standing requirement because of what amounts to a formal distinction would disregard the superior rights doctrine that our supreme court has set down in *Kirchner* and *Peterson* and that we are bound to follow.

Moreover, there is no discernible legitimate benefit from granting a minor standing to bring a petition on behalf of nonparental parties. If the nonparents wish to obtain custody of the child and believe that they can show that the child is not in the physical custody of a parent, they may file a section 601(b)(2) petition themselves. If the nonparents do not desire custody, it would be untenable to allow the minor to bring an action to force the court

(and the natural parent) to give the nonparents what they do not want.

Petitioner argues that denying him standing to bring a petition to change his own custody violates his constitutional rights to due process and equal protection. Insofar as we can follow this argument, we conclude it is meritless.

Petitioner claims that he has been deprived of his due process right to be heard on his petition for a change of custody. He maintains—or assumes—that the right of a minor to pursue an action for a change of custody is akin to one of several constitutional rights (such as counsel in criminal cases or abortion rights) that unemancipated minors share with adults. However, a minor child has no due process liberty interest in remaining in the physical possession of relatives against the wishes of the natural parent. *Petition of Kirchner*, 164 Ill. 2d at 499-500.

Petitioner asserts further that, because equal protection applies to minors as well as adults, denying him standing to bring his petition creates an impermissible classification that denies him his fundamental right to counsel. Petitioner's sole authority for this argument is case law stating that the sixth amendment right to counsel extends to the prosecutions of minors for delinquency. (*In re A.W.* (1993), 248 Ill. App. 3d 971, 976, citing *In re Application of Gault* (1967), 387 U.S. 1, 18 L. Ed. 2d 527, 87 S. Ct. 1428.) We fail to see the relevance of this undoubted principle. Petitioner begs the question: he has no right to counsel in bringing his action if he has no right to bring the action in the first place. That a minor is entitled to counsel when the State seeks to deprive him of his liberty in no way demonstrates that he is constitutionally entitled to bring a civil action to determine his own legal guardians.

Because the trial court properly dismissed petitioner's action, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

GEIGER and THOMAS, JJ., concur.